| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:17-CR-355 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | JUDGE JOHN ADAMS |
| | ) | |
| DONALD NEFF, | ) | |
| | ) | **DEFENDANT DONALD NEFF'S** |
| Defendant. | ) | **MOTION TO SUPPRESS** |
| | ) | |
| | ) | **(Hearing Requested)** |

Defendant Donald Neff (hereinafter, "Defendant"), by and through his undersigned

counsel, and pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C) and 41(h), respectfully

moves this Court for an Order granting his Motion to Suppress (the "Motion"). Defendant's

Motion seeks an Order suppressing and excluding all evidence, physical and testimonial,

obtained or derived from unlawful warrantless searches and seizures of Defendant's property—

including his cell phone, laptop computer, tablet, and other electronic devices—conducted by the

Ohio Adult Parole Authority (hereinafter, the "APA"), Kent Police Department, Portage County

Sheriff's Office, and the Ohio Internet Crimes Against Children Task Force (hereinafter,

"ICAC"). Specifically, Defendant requests suppression and exclusion of all evidence obtained or

derived from the following:

    (1)    The warrantless search and seizure of Defendant's personal cell phone on March 24, 2017, conducted by the APA;

    (2)    The warrantless search of Defendant's personal cell phone at the Kent Police Department on or about March 27, 2017, conducted by the APA and/or the Kent Police Department;

(3)      The warrantless APA seizure of Defendant's other electronic devices on or about March 27, 2017, and the subsequent warrantless ICAC search of those devices on or about May 12, 2017; and

(4)      Any unlawful interrogations by an APA or other law-enforcement officer, as the facts may warrant after testimony at any suppression hearing.

A memorandum in support of this Motion is attached.

Respectfully submitted,

/s/ *Chris N. Georgalis*
Chris N. Georgalis (0079433)

**Flannery | Georgalis, LLC**
1375 E. 9th St., Suite 2810
Cleveland, OH 44114
Telephone: (216) 367-2095
Email: chris@flannerygeorgalis.com

*Attorney for Defendant Donald Neff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

Respectfully submitted,

_/s/ Chris N. Georgalis_

Chris N. Georgalis

_Attorney for Defendant Donald Neff_

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:17-CR-355 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | JUDGE JOHN ADAMS |
| | ) | |
| DONALD NEFF, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT DONALD NEFF'S** |
| Defendant. | ) | **MOTION TO SUPPRESS** |

## I.     INTRODUCTION

This case has revealed that the Ohio Adult Parole Authority violates parolees' Fourth Amendment rights as a matter of routine practice. This investigation began during a routine home visit of a parolee—Defendant Donald Neff (hereinafter, "Defendant")—who had been fully compliant with the terms and conditions of his parole for two and half years at the time of the visit. During the routine home visit, parole officers from the Ohio Adult Parole Authority (hereinafter, the "APA") demanded, without any—let alone reasonable—suspicion, to search Defendant's cell phone as a matter of what the officers apparently considered proper routine practice. This practice, and the Government's support of it, underscores the fact that APA officers do not understand—and therefore routinely abuse—their statutory authority to conduct warrantless searches of parolees and their property. Without the APA officers violating Defendant's constitutional rights, through that first warrantless search and otherwise as discussed further below, the Government would not have obtained the evidence consisting of allegedly contraband files, or Defendant's statements about those files. For the reasons set forth herein, this evidence must be suppressed.

## II.    STATEMENT OF FACTS

Defendant is charged in a two-count Indictment with receiving and distributing child pornography (18 U.S.C. § 2252(a)(2)) and possessing child pornography (18 U.S.C. § 2252A(a)(5)(B)).  These charges stem from an investigation conducted by the APA, the Portage County Sheriff's Office (hereinafter, the "PCSO"), and the Ohio Internet Crimes Against Children Task Force (hereinafter, "ICAC").  The charges are based on allegations that ICAC found deleted contraband images and multimedia files in unallocated electronic space on two of Defendant's electronic devices during a warrantless forensic search of the devices.  The investigation leading up to that ICAC search involved several warrantless searches and seizures of Defendant's property, including searches of the following three devices, and components thereof: (1) an LG LS775 cell phone (hereinafter, the "Cell Phone"); (2) an Acer laptop computer (the "Laptop"); and (3) a micro SD card (the "SD Card").

In September 2015, Defendant was released from state prison and began serving a term of parole, supervised by the APA.  His conditions of supervision included, among others, that Defendant was not to possess or view sexually explicit material or pornography, and was subject to warrantless searches pursuant to Ohio Revised Code ("O.R.C.") § 2967.131.  (Conditions of Supervision, attached as **Exhibit A**.)  There is no indication that Defendant did anything other than strictly comply with the terms of his supervision for the next two and a half years.

On March 24, 2017, APA officers conducted a routine home visit at Defendant's residence.  During the visit, one of the officers, without reasonable suspicion, warrantlessly seized and searched Defendant's Cell Phone by hand.  During that search, the APA officer purportedly found what she characterized in a report as "possible child pornography and

evidence of [Defendant] going to possible child pornography websites." The APA officers confiscated the phone and failed to return it to Defendant.

Three days later, on March 27, 2017, APA officers returned to Defendant's home, this time with uniformed Kent Police Department officers. The officers demanded to know where Defendant's other electronic devices were. According to the APA report, Defendant told them that he had taken the devices to a friend's house. The officers instructed Defendant to call Defendant's friend and to instruct the friend to place the devices onto the friend's front porch. The officers placed Defendant into handcuffs and transported him to his friend's house, where the officers picked up the devices—including the Laptop and SD Card—from the friend's front porch. The officers then transported Defendant to the Portage County Jail, where he was held overnight and then released without being charged.

Also on March 27, the APA provided the Cell Phone to the Kent Police Department, where a more detailed warrantless search was performed on the Cell Phone. That search revealed approximately 20 images of children in various stages of dress. No nude pictures were found. Based on the information obtained from these two warrantless searches (on March 24 and March 27), the APA and/or other law-enforcement officers determined that all of the electronic property would be sent to ICAC so that a complete forensic examination could be performed.

More than a month later, on or about May 12, 2017, a detective with ICAC performed a warrantless search on eleven devices seized from Defendant—including the Cell Phone, Laptop, and SD Card—using sophisticated computer forensic hardware and software. The Cell Phone contained no child pornography, only the images of children in various stages of dress. The searches of the Laptop and SD Card revealed deleted, allegedly contraband images and multimedia files in unallocated space on those devices.

On June 16, 2017, the APA and the PCSO went to Defendant's home and questioned him about the results of ICAC's search, without giving him a Miranda warning. On June 19, Defendant called the PCSO and said that he wanted to meet with the PCSO detective and talk about the ICAC search results. On June 20, Defendant did not appear at the PCSO station due to an illness. APA officers and the PCSO detective returned to Defendant's home and placed him under arrest, and the PCSO detective gave Defendant a Miranda warning. Officers questioned Defendant as they transported him back to the PCSO station. Once at the PCSO station, Defendant was taken to the office of a PCSO lieutenant where the lieutenant questioned Defendant about the results of the ICAC search, including showing him the ICAC search results. Thereafter, Defendant waived a supervised release hearing and was found to be in violation of his parole and sentenced to 90 days in prison for the violation.

On September 13, 2017, a federal grand jury returned the instant Indictment.

### III.    LAW AND ARGUMENT

The Fourth Amendment of the U.S. Constitution, and a similar provision in the Ohio Constitution, prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Ohio Const. art. I, § 14. The Supreme Court has noted that the Fourth Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by government agents. *See Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 613–14 (1989) (citations omitted). The Supreme Court has held that, "[e]xcept in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Id.* at 619 (citations omitted). One such exception to the Fourth Amendment's warrant requirement is when "special needs" exist that make the warrant and probable-cause requirement impracticable. *E.g.*, *id.* (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).

Under this "special need" exception, a state by law may provide for searches of parolees and

their property on less than probable cause, so long as the rules are reasonably related to the

purposes of parole. *See United States v. Payne*, 181 F.3d 781, 786 (6th Cir. 1999) (citing *Griffin*,

483 U.S. at 873); *United States v. Holloway*, 740 F.2d 1373 (6th Cir. 1984), *cert. denied*, 469

U.S. 1021 (1984) (stating this rule with respect to probation).

Ohio has provided for warrantless parole searches in Ohio Revised Code § 2967.131(C),

which states, in pertinent part:

> During the period of a conditional . . . parole, . . . **authorized field officers of the [adult parole] authority** who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, **if the field officers have reasonable grounds** to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's . . . parole . . . .

O.R.C. § 2967.131(C) (emphasis added).

A warrantless parole search not authorized by a state's regulatory parole-search scheme is

unreasonable unless it independently satisfies traditional Fourth Amendment requirements. *See*

*Payne*, 181 F.3d at 787–88 (citation omitted). Ohio's "reasonable grounds" requirement mirrors

the federal "reasonable suspicion requirement." *United States v. Loney*, 331 F.3d 516, 521 (6th

Cir. 2003); *see also United States v. Davis*, 415 F. App'x 709, 711 (6th Cir. 2011). Ohio's

"reasonable grounds" is therefore based on the totality of the circumstances and requires

"articulable reasons" and "a particularized and objective basis for suspecting the particular

person . . . of criminal activity." *Payne*, 181 F.3d at 788 (citation omitted); *see also Davis*, 415

F. App'x at 712.

In other words, the APA cannot conduct a warrantless search unless the search is based on at least reasonable grounds, which is equivalent to federal reasonable suspicion. If the APA conducts a warrantless search without reasonable grounds, that search violates the Fourth Amendment. The Sixth Circuit has held that evidence obtained by parole officers in violation of the Fourth Amendment must be suppressed in subsequent criminal proceedings. *Payne*, 181 F.3d at 788.

The seizure and searches of Defendant's electronic devices by the APA and other law-enforcement agencies were not authorized by Ohio's parole-search statute, and do not independently fall under any exception to the Fourth Amendment's warrant requirement. Therefore, the seizures and searches violated Defendant's Fourth Amendment rights and all evidence obtained through or derived from those seizures and searches must be suppressed and excluded.

### A. The APA's Warrantless Seizure and Search of Defendant's Cell Phone During the March 24, 2017 Home Visit Was Without Reasonable Grounds and Therefore Violated the Fourth Amendment, Requiring that All Evidence Derived Therefrom Be Suppressed.

Where, as here, a state parole-search statute satisfies the Fourth Amendment's reasonableness requirement, the validity of the search depends upon whether the facts of the search itself satisfy the state statute. *Loney*, 331 F.3d at 520. In the case of Ohio parole searches, this inquiry turns on whether the parole officers conducting the search had reasonable grounds to suspect that the parolee was violating the terms and conditions of his parole, so as to satisfy O.R.C. § 2967.131.[1] *See id.* at 521.

---

[1] Defendant anticipates that the Government may attempt to rely on *Samson v. California*, 547 U.S. 843 (2006), and other cases dealing with California's broad parole scheme, to justify this warrantless, suspicionless search. This reliance and justification would be legally erroneous. *Samson* does not stand for the proposition that parolees can be subject to suspicionless searches *absent a reasonable state parole*

The APA's warrantless search of Defendant's Cell Phone on March 24, 2017, was without reasonable suspicion. To that point, the APA officers' report of the March 24 home visit is completely devoid of any indication that APA officers had any grounds, let alone reasonable grounds, to search the phone. To confirm this fact, on October 31, 2017, defense counsel requested from the Government "[a] detailed explanation of the legal basis for the APA to conduct a home visit of Mr. Neff and to search his cell phone on March 24, 2017, including, if applicable, a statement of facts that purportedly gave rise to any reasonable suspicion." In its response to that request, the Government did not (because it cannot) provide any facts suggesting that the APA officers had reasonable grounds to conduct the Cell Phone search.

---

*scheme or a parole condition providing for suspicionless searches* that would make such searches reasonable. The specific question presented in *Samson* was "whether a condition of release [which permitted search of a parolee 'with or without a search warrant and with or without cause'] can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson*, 547 U.S. at 847. The Supreme Court was specifically considering the reasonableness of a search "solely predicated upon the condition of [parole]," *id.* at 850, and, even then, limited its decision to "whether a suspicionless search, *conducted under the authority of [California's parole-search] statute*, violated the Constitution." *Id.* at 846 (emphasis added); *see also United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007) ("*Samson* does not represent a blanket approval for warrantless parolee . . . searches . . . without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law."). Unlike California, Ohio has not authorized suspicionless searches of parolees, and Defendant's conditions of supervision did not contain any provision allowing for warrantless searches without suspicion (see Exhibit A) such that a suspicionless search would have been reasonable under the *Samson* totality-of-the-circumstances framework. Therefore, *Samson* would not support any argument that the suspicionless search of Defendant was reasonable. Further, no precedent would support an argument that an Ohio parolee, like Defendant, is subject to suspicionless searches notwithstanding the plain language of O.R.C. § 2967.131 and absent any condition of parole to the contrary.

In fact, post-*Samson*, courts in the Sixth Circuit properly continue to evaluate warrantless parole searches in Ohio under the *Loney* test, requiring that such searches be based upon reasonable suspicion. *E.g.*, *Davis*, 415 F. App'x at 711–12; *United States v. Wright*, 332 F. App'x 257, 259 (6th Cir. 2009); *Johnson*, 2017 WL 2119345 at *3–4. The Sixth Circuit clearly and properly mandates that Ohio parole searches— and searches in other states with analogous statutes, like Michigan (*see United States v. Noel*, 659 F. App'x 284, 286–87 (6th Cir. 2016))—be based on reasonable suspicion, an approach that is routinely and properly followed by district courts in the Circuit. Indeed, this Court itself properly applied the *Loney* test in evaluating the merits of a habeas petitioner's argument that his counsel should have pursued a motion to suppress evidence from a warrantless Ohio parole search. *Foster v. United States*, No. 5:10CR85, 5:12CV1281, 2013 WL 628681 at *1 (N.D. Ohio Feb. 20, 2013) (Adams, J.).

Instead, the Government, apparently after conferring with the APA or others involved in the investigation, erroneously argued that no reasonable grounds were necessary because, according to the Government, the APA regularly conducts warrantless and suspicionless searches of cell phones during routine parole visits.  To date, the Government, despite request, has offered no legally supported justification as to why the APA officers could lawfully search the Cell Phone on March 24, 2017, without reasonable grounds.  Because the APA officers did not have reasonable grounds to search the Cell Phone, all evidence obtained or derived from that search must be suppressed and excluded.[2]

### B. The Results of the APA's Warrantless Search of Defendant's Cell Phone Did Not Provide Reasonable Grounds to Continue to Seize or Further Search the Cell Phone or to Seize or Search Defendant's Other Electronic Devices Without a Warrant, and Therefore those Seizures and Searches Violated the Fourth Amendment, Requiring Suppression.

Even if the March 24 search of the Cell Phone was lawful, which it was not, there are serious questions regarding whether what the APA officers saw on the Cell Phone on March 24 justified the officers' continued seizure of the Cell Phone, further search of the Cell Phone, and seizure and search of Defendant's other electronic devices, including the Laptop and SD Card.  It unclear from the discovery produced to date what, if anything, the APA officers saw on Defendant's Cell Phone on March 24 that would have given them reasonable grounds to further search the Cell Phone or to seize and search Defendant's other electronic devices.  A hearing is necessary to determine what the officers saw during that search, which will determine whether

---

[2] The Government's position regarding this point has been consistent throughout this matter, even in its responses to direct questions regarding the justification for the Cell Phone search.  If the Government or the APA changes its position at this late date—arguing that the officers did have reasonable grounds to search the Cell Phone—Defendant will seek, and would be entitled to receive, detailed discovery regarding any and all communications between and among the APA officers and other law-enforcement officers and federal prosecutors that led to the Government making what would be erroneous representations.  Furthermore, the veracity of any such claim that the APA had reasonable grounds would be seriously challenged by the law-enforcement record provided to Defendant.

the APA had reasonable grounds to conduct the searches and seizures subsequent to March 24. Until the Government shows that such reasonable grounds did exist, the Defendant's position is that no reasonable grounds existed and all seizures and searches subsequent to March 24 were unreasonable and violated Defendant's Fourth Amendment rights, requiring suppression.

**C. Even if There Were Reasonable Grounds, Which There Were Not, the APA Exceeded the Scope of its Authority by Warrantlessly Seizing and Searching More Than Ten Devices.**

As stated above, O.R.C. § 2967.131(C) provides that

> During the period of . . . parole . . . authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, **another item of tangible or intangible personal property** . . . if the field officers have reasonable grounds to believe that the individual [is violating the law] or otherwise is not complying with the terms and conditions of the individual's or felon's conditional . . . parole.

O.R.C. § 2967.131(C) (emphasis added). The phrase "another item of tangible . . . personal property" is the statutory language that affords the APA the authority to search items such as Defendant's Cell Phone or his Laptop. But, contrary to the Government's interpretation, it does not afford the APA the authority to search all of Defendant's personal property all at once. The word "another" in this sentence is the operative term. It is, as used in this context, an adjective modifying the word "item." Its definition, according to Merriam-Webster, is "being one more in addition to one or more of the same kind," as in, one more piece of personal property "in addition to," as provided in the statute, a motor vehicle. But significantly, the term signifies singularity: that is, "one more."

Thus, the only reasonable interpretation of O.R.C. § 2967.131(C) is that, even if the authorized field officer had reasonable grounds to believe that Defendant was violating the law, which she did not, the statute authorized the APA, in pertinent part, to warrantlessly search only

Defendant, his residence, his car, and <u>one other</u> item of tangible personal property. The word "another" is an important limitation to the power of the APA over its parolees. It means the APA's power to warrantlessly search, even with reasonable grounds, is, and must be, finite. If the APA desired to search beyond that one item, which they did, they should have sought a warrant.

Here, however, the APA warrantlessly seized and searched more than ten items of tangible personal property. This many warrantlessly seized and searched items clearly goes beyond the scope of § 2967.131(C) and exceeds the APA's authority over Defendant. Having already seized Defendant's Cell Phone on March 24, 2017, the APA had no authority to warrantlessly seize the remaining ten items on March 27, 2017. And, according to the Government's forensic examiner, it was from the March 27, 2017 seized items that the Government obtained any and all of the evidence in this case to support its allegations. It, therefore, must all be suppressed.

> **D. Even if There Were Reasonable Grounds, Which There Were Not, ICAC Had No Authority to Conduct a Warrantless Search Under the Ohio Statute Giving "Authorized Field Officers of the [APA]" Power to Warrantlessly Search Parolees' Property With Reasonable Grounds.**

As stated above, Ohio's parole-search statute only permits "authorized field officers of the [APA]" to warrantlessly search parolees and their property, and even at that, only when the officers have reasonable grounds. Because ICAC's representatives and agents are not "authorized field officers" of the APA, ICAC's warrantless search of Defendant's electronic devices could not have been justified under O.R.C. § 2967.131(C). Accordingly, the evidence obtained from this search must be suppressed.

Ohio Revised Code § 2967.131(C) expressly restricts the state agents authorized to warrantlessly search parolees and their property. The only state agents granted this special and

specific authority under the statute are "authorized field officers" of the APA. Conversely, ICAC agents and representatives are not authorized to conduct warrantless searches pursuant to O.R.C. 2967.131(C). In this regard, O.R.C. 2967.131(C) is noticeably more restrictive than similar statutes in other states authorizing probation/parole officers *and* other law enforcement officers to conduct warrantless searches. *See, e.g.*, *Sampson v. California*, 547 U.S. 843, 857 (2006) (analyzing California's parole supervision statute, which permits searches by parole officers or other law enforcement officers).

To be sure, the Sixth Circuit has recognized that it "is wholly permissible for law enforcement officers and probation officers to 'work together and share information to achieve their objectives.'" *United States v. Penson*, 141 F. App'x 406, 410 (6th Cir. 2005) (citing *United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994)). However, in such cases, the other law enforcement agencies involved are typically working under the close direction of the parole/probation agency and in furtherance of that agency's legitimate objectives. *See, e.g.*, *United States v. Warren*, 566 F.3d 1211, 1217 (10th Cir. 2009) (recognizing that a police officer may participate in a search of a parolee's home by parole officers "so long as the police officer is acting under the direction of a parole officer"); *United States v. Reyes,* 283 F.3d 446, 463–64 (2nd Cir. 2002); *United States v. McFarland,* 116 F.3d 316, 318 (8th Cir. 1997) (stating that "[p]arole and police officers may work together . . . provided the parole officer is pursuing parole-related objectives"); *United States v. Watts,* 67 F.3d 790, 794 (9th Cir. 1995), *rev'd on other grounds,* 519 U.S. 148 (1997) (approving of probation officer's enlistment of police officers to assist his own legitimate objectives)). What happened here is altogether different, and illegal.

Here, even if the APA's warrantless seizure of Defendant's devices was legal under Ohio law, which it was not, the APA did not have the authority to completely outsource the search of those devices, without a warrant, to an agency not authorized under Ohio law to conduct warrantless parole searches. To that point, the defense has uncovered no case, state or federal, where similar conduct has been held to be valid. Had the Ohio legislature intended to sanction this type of substantial (and additional) intrusion upon parolees' Fourth Amendment rights, it would have said so in O.R.C. § 2967.131(C). Because it did not, and the plain language of the statute clearly prohibits what the APA and ICAC did here, this Court should conclude that the search of Defendant's devices by ICAC was unlawful. The results of the search, therefore, should be suppressed.[3]

### E. The Law-Enforcement Record is Vague Regarding Material Facts About Interrogations of Defendant, Including Facts Regarding When Defendant Was in Custody and Whether and When Defendant Was Given *Miranda* Warnings, and Therefore a Hearing is Necessary and Any Illegally-Obtained Statements Must Be Suppressed.

The APA and law-enforcement records do not provide sufficient details that would allow defense counsel to fully evaluate Fifth Amendment suppression issues. After reviewing the discovery provided, however, and after conducting independent inquiry, defense counsel has serious concerns that Defendant's Fifth Amendment rights may have been violated, concerns that defense counsel cannot adequately allay without a hearing to develop further facts. Therefore, a hearing is required to develop these issues. Until the Government shows Defendant's statements

---

[3] Furthermore, the APA report raises a serious concern about whether law-enforcement officers used the APA's parole authority to circumvent the Fourth Amendment's warrant requirement. The APA report, which is vague in its account of the investigation, strongly suggests that there was a discussion between the APA and police officers of the Kent Police Department on March 27, 2017, about whether the evidence uncovered from the Cell Phone would support a finding of probable cause for a warrant. No warrant was ever obtained for the search of the Laptop or SD Card. A hearing is therefore necessary to determine whether law-enforcement officers intentionally used the APA's "special needs" search authority to override the Fourth Amendment's warrant requirement.

were not obtained during custodial interrogations without proper warnings and a proper waiver, the Defendant argues that some of his statements were obtained in violation of the Fifth Amendment, and therefore that those statements, and any evidence derived from those statements, must be suppressed.

## IV.    CONCLUSION

The APA officers conducted warrantless, suspicionless searches under the erroneous impression that such searches were legal and proper, likely a routine practice for the APA.  But the officers were mistaken.  Neither the Fourth Amendment, nor federal or state law, permitted the APA officers to search the Cell Phone without a warrant or reasonable grounds to suspect that Defendant was violating the law or the conditions of his release.  The APA's search and seizure of the Cell Phone therefore violated Defendant's Fourth Amendment right to be free from unreasonable searches, and the evidence obtained as a result of that illegal search—including all evidence subsequently obtained as a result of whatever the APA officers found during the initial illegal search—must be suppressed.

Even if that March 24 search was proper, which it was not, the law-enforcement record of the steps the APA and other law-enforcement officers took subsequently raise serious suppression issues as set out above.  Furthermore, the law-enforcement record in this case is vague and contains internal inconsistencies that are material to evaluating the constitutionality of the searches and interrogations in this case.  Therefore, a hearing is necessary to develop the factual record and fully evaluate these and other suppression issues.  Because the record is so vague and, at times, inconsistent, Defendant reserves the right to supplement this Motion if facts elicited at any suppression hearing reveal further violations of Defendant's Fourth or Fifth Amendment rights, or other constitutional violations.

For the foregoing reasons, the Defendant respectfully requests that his Motion to Suppress be granted and that the evidence be suppressed outright or that a suppression hearing be held.

Respectfully submitted,

/s/ *Chris N. Georgalis*
Chris N. Georgalis (0079433)

**Flannery | Georgalis, LLC**
1375 E. 9th St., Suite 2810
Cleveland, OH 44114
Telephone: (216) 367-2095
Email: chris@flannerygeorgalis.com

*Attorney for Defendant Donald Neff*