IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:17CR355 |
|---|---|---|
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| DONALD NEFF, | ) ) ) ) | <u>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Brian McDonough, Assistant U. S. Attorney, and respectfully requests that the Court deny defendant Donald Neff's motion to suppress because the Ohio Adult Parole Authority ("APA") had reasonable grounds to seize and examine the cell phone and other electronic devices of Neff, a convicted child rapist who was on APA supervision. Neff's internet browser history revealed that Neff visited a "child lovers" website, that was a haven for other child sex offenders. Neff's photo gallery included photos of boys in underwear. After his arrest, Neff confessed to receiving visual depictions of minors engaged in sexually explicit conduct from another convicted child sex offender via the Internet.

                Respectfully submitted,

                JUSTIN E. HERDMAN
                United States Attorney

    By:   /s/ Brian McDonough
           Brian McDonough (OH: 0072954)
           Assistant United States Attorney

                        United States Court House  
                        801 West Superior Avenue, Suite 400  
                        Cleveland, OH 44113  
                        (216) 622-3965  
                        (216) 522-2403 (facsimile)  
                        Brian.McDonough@usdoj.gov

I.   **<u>INTRODUCTION</u>**

Donald Neff is a convicted child rapist and sexual predator. His victims were 11- and 12-year-old boys. He would give the boys money or bicycles, or take them places like batting cages or miniature golf. He showed the boys videos of children having sex with other and showed boys how to masturbate.

Neff's first sex crime conviction[1] occurred in 1990, at age 22, when he was sentenced to two years in prison in Ohio for engaging in anal intercourse with a 12-year-old boy. Neff's second sex crime conviction[2] occurred in 2000, at age 33, when he was sentenced to 15 years in prison in Ohio for anally and orally raping an 11-year-old boy and 12-year-old boy. The state court classified Neff as a sexual predator, requiring lifetime registration and reporting requirements. After his release from prison, Neff was placed on post-release control and supervised by the APA.

Neff was initially placed on high supervision, with APA officers making home visits one per month. His supervision later changed to moderate, with APA officers making home visits once every two months. The conditions of Neff's supervision included sex offender screening/program if indicated; no unsupervised contact with minors (supervising adult must be approved by the PA) and no possession or viewing of sexually explicit material or pornography. Neff acknowledged that under Ohio Revised Code Sections 2951.02 and/or 2967.131, he was subject to warrantless searches. The APA was permitted to conduct warrantless searches of Neff or his property, if the APA had reasonable grounds to do so.

---

[1] State v. Neff, Portage County Common Pleas Court Case No. 90-CR-0032.
[2] State v. Neff, Summit County Common Pleas Court Case No. 00-09-2127.

On Friday, March 24, 2017, APA officers Sarah Rannebarger and Everett Rogers visited Neff at his home. During the visit, APA officers Rannebarger and Rogers asked Neff routine questions about his current status. Neff conversed with the agents about looking for a second job. The APA officers observed a cell phone on a bedroom nightstand. The APA officers asked Neff if his cell phone had internet access and if the cell phone contained any inappropriate content. The APA officers observed Neff suddenly become nervous. Neff's face turned red and he began stuttering. AS Neff stuttered in his speech, the APA officers noticed the tone of his voice changing. Neff began fidgeting and tried to reach for the cell phone. Based on Neff's conduct and body language, the APA officers picked up Neff's cell phone. Neff provided the APA officers with the passcode to the cell phone.

When searching cell phones, the routine areas for APA officers to review are the Internet browsing history and the photo gallery. The APA officers reviewed the Internet browser history on Neff's cell phone. The history revealed that Neff had visited a "child lovers" website. Neff explained that this was a haven for convicted child sex offenders to share information. When the APA officers reviewed Neff's photos, they observed pictures of children in various stages of undress, including boys in underwear. Given Neff's prior rape and sexual battery convictions, the APA officers were concerned about N eff visiting the haven for child lover's website, Neff possessing images of children in various stages of undress, including boys in underwear. Based on the totality of the circumstances the APA officers took Neff's phone.

After the visit with Neff, the APA turned the cell phone over to the Kent police department for further examination. The Kent police attempted a cell phone extraction or cell phone dump, but suggested contacting the Ohio Internet Crimes Against Children Task Force to examine Neff's cell phone. The APA officers consulted with their supervisor and went back to

see Neff on Monday, March 27, 2017. When asked if Neff had additional devices, Neff indicated that he had given them to a friend. Neff has also obtained a new cell phone for the weekend. Based on the previous conduct, findings, and the totality of the circumstances, the APA asked Neff for his new phone and his other devices, including a laptop, tablet, and Micro SD cards. The APA picked up all the devices and submitted them to the Ohio Internet Crimes against Children Task Force ("ICAC") for forensic examination. Neff provided the passcodes for the devices.

ICAC's May 12, 2017, forensic examination of Neff's devices revealed the following:

- Neff's LG Cell Phone, seized on March 24, 2017, contained numerous image files of young males in various stages of undress;
- Neff's 320GB Western Digital hard drive from his ACER laptop contained 60 images of suspected child pornography; and
- Neff's 8GB Micro SD Card contained 450 images of suspected child pornography and 1 multi-media file of suspected child pornography.

On June 16, 2017, Portage County Sheriff's Detective Shean Boughner and APA officers Beckett and Wise visited Neff at his home. They advised Neff that he was not under arrest. Neff invited the officers in and spoke with them at his dining room table. Although he initially denied, Neff admitted to receiving, viewing, and sending child pornography of nude teenage boys, including an older man performing oral sex on a young boy that Neff described as maybe between 10-12 years old but "definitely younger than thirteen." Neff would view the images and videos in his residence, as recently as January 2017, and would delete the child pornography later.

On June 20, 2017, APA officers Wise and Beckett apprehended Neff for violating his parole. Det. Boughner advised Neff of his Miranda rights. Neff confessed to downloading, possessing, and viewing child pornography from November 2016 through February 2017. After being transported to the Justice Center, Lt. Gregory Johnson interviewed Neff. The interview was recorded on video. Neff stated that he was familiar with the steps that must be taken to download child pornography. Lt. Johnson reviewed 59 child pornography videos identified by ICAC on Neff's devices. Neff acknowledged receiving and viewing 11 of the videos. Four of the videos feature pre-teen male juveniles interacting with adult males.

On June 27, 2017, Neff wanted to provide Det. Boughner additional information. After Det. Boughner advised Neff of his Miranda rights, Neff articulated his feeling of guilt regarding possessing child pornography. Neff identified another child rapist that he had communicated with and provide details about those child victims.

**II. LAW AND ARGUMENT**

>   A. The APA officers had reasonable grounds to search Neff's cell phone because after the officers asked Neff if his cell phone had internet access or contained inappropriate material, the officers observed him become very nervous, he stuttered his speech, his tone of voice changed, his face turned red, he began fidgeting, and he tried to grab his cell phone.

The Fourth Amendment does not prohibit a parole officer's conducting a warrantless search of a parolee if the officer's search was "supported by reasonable suspicion and authorized by a condition of his probation." U.S. v. Knights, 534 U.S. 112, 122 (2001). When determining reasonableness, courts examine the totality of the circumstances. Id. at 118 (citing Ohio v. Robinette, 519 U.S. 33, 39 (1996)). Probationary status informs both sides of the reasonableness balance. Id. at 119. A warrantless search based on a parole condition that the prisoner agreed to observe during the balance of his sentence does not violate the Fourth Amendment. Samson v.

California, 547 U.S. 843, 850 (2006). Parolees have less expectation of privacy than probationers because "parole is more akin to imprisonment than probation." Id.

An alternative approach for determining whether warrantless searches meet the Fourth Amendment's reasonableness requirement takes the special needs doctrine as it starting point—the state's supervision of parolees and probationers pursuant to statute or regulation. Griffin v. Wisconsin, 483 U.S. 868, 873-76 (1987). Griffin's special needs approach adopts a two-step inquiry—(1) whether state policy is reasonable under the Fourth Amendment, and (2) whether the search satisfies the requirements of that policy. U.S. v. Henry, 429 F.3d 603, 608 (6th Cir. 2005) (citing U.S. v. Loney, 331 F.3d 516, 520 (6th Cir. 2003)).

Federal courts of appeal, including the Sixth Circuit, hold that Knights and Griffin "represent two distinct analytical approaches under which a warrantless probationer search may be excused." U.S. v. Herndon, 501 F.3d 683, 688 (6th Cir. 2007) (citing U.S. v. Freeman, 479 F.3d 743, 746 (10th Cir. 2007)); see also U.S. v. Warren, 566 F.3d 1211, 1215 (10th Cir. 2009). A court applies Griffin where a search is made pursuant to state policy and Knights where a search is made pursuant to a parole condition. U.S. v. Tessier, 814 F.3d 432, 433 (6th Cir. 2016) (footnote 1). Federal courts' review of state policy is generally governed by the state supreme court's interpretation of state law. Jones v. Lafferty, 173 F. Supp. 3d 493, 500 (6th Cir. 2016).

Here, the APA officers had reasonable grounds under Ohio Revised Code Section 2967.131 to search Neff's cell phone. After the APA officers asked Neff if his cell phone had internet access or contained inappropriate material, the officers observed him become very nervous, he stuttered his speech, his voice tone changed, his face turned red, he began fidgeting, and he tried to grab his cell phone. Based on the totality of the circumstances, the APA officers had reasonable grounds to review Neff's cell phone.

7

B.  <u>The website browser history and images on Neff's cell phone provided reasonable grounds for a search of Neff's cell phone</u>.

Neff's website browser history and photo gallery troubled the APA officers.  The APA officers knew that his prior child sex convictions indicated that Neff was a sexual deviant who derived sexual gratification from children.  His cell phone revealed that he visited a "child lovers" website and had pictures of children in various stages of undress, including boys in underwear.  Based on the totality of the circumstances, the APA officers had reasonable grounds to search Neff's cell phone.

C.  <u>The initial examination of Neff's cell phone provided reasonable grounds for a search of all Neff's electronic devices</u>.

Per APA policy, evidence of a new crime is reported to local law enforcement by the APA.  Since Neff lived in Kent, the APA provided Neff's cell phone to the Kent police department.  The Kent police department performed a Cellebrite examination on Neff's phone.  The examination revealed 20 pictures downloaded from the internet of prepubescent children in various stages of undress.  Neff's conduct between March 24, and March 27, 2017, indicated consciousness of guilt.  In that interim, Neff obtained a new cell phone after the APA officers took his.  Neff also moved his electronic devices to a friend's house.  Based on the totality of the circumstances of the Kent police examination, Neff's conduct and history the APA officers had reasonable grounds to search all of Neff's electronic devices.

D.  <u>The APA and Kent Police properly sought ICAC's assistance to forensically examine Neff's devices</u>.

The ICAC is a federal anti-crime initiative funded by the U.S. Department of Justice's Office of Juvenile Justice and Delinquency Prevention.  It is a collaboration of city, county, state and federal law enforcement authorities across Ohio whose mission is to identify, arrest and prosecute individuals who: (1) use the Internet to lure minors into illicit sexual relationships; or

(2) use the Internet to produce, distribute or solicit child pornography. Many local and state law enforcement agencies do not possess the software, equipment, and training to forensically examine digital devices for child pornography. Accordingly, ICAC serves as a resource to those agencies. Nothing in the Ohio Revised Code or case law prohibits ICAC from assisting the Kent police department, Portage Count Sheriff's Office or the APA with forensic examinations.

    E. <u>The APA properly obtained Neff's admissions and confessions</u>.

The purpose of <u>Miranda</u> warnings is to protect the suspect's Fifth Amendment right to not be "compelled in any criminal case to be a witness against himself." U.S. Const. Amend V. An agent for the government must advise a suspect of his <u>Miranda</u> rights only if the suspect is subject to a custodial interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). <u>Miranda</u> defined a custodial interrogation as, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* In analyzing the custodial status of a suspect, the Courts have relied on a totality of the circumstances approach to determine, "how a reasonable man in the suspect's position would have understood the situation." <u>U.S. v. Swanson</u>, 341 F.3d 524, 528 (6th Cir. 2003) (quoting <u>U.S. v. Phillip</u>, 948 F.2d 241, 247 (6th Cir. 1991)). A reasonable person in Neff's position would not believe that he was in custody and therefore no <u>Miranda</u> warnings were necessary at Neff's home.

Case law indicates that the totality of the circumstances typically does not rise to that of a custodial interrogation when the police question a suspect in his home. <u>U.S. v. Salvo</u>, 133 F.3d. 943, 350 (6th Cir. 1998). When the suspect is questioned in his home, the courts have relied on the following factors to determine whether there was a custodial interrogation: (1) the purpose of the questioning (2) whether the place of the questioning was hostile or coercive (3) the length of

9

the questioning and (4) other indicia of custody. Swanson, 341 F.3d at 528. The factors taken together would not lead a reasonable person to believe that Neff was in custody.

Here, numerous facts about the Neff's home visit show that the June 16, 2016, interview with Neff was noncustodial. The APA officers and Dt. Boughner advised Neff that he was not under arrest; he was not in custody; he was free not to speak with the officers; if he did speak, he could stop speaking to the officers at any time; and any statements he made to the officers were voluntary. Furthermore, the officers were calm and professional in speaking with Neff. Neff invited the officers to sit down at the dining room table. Neff's demeanor was calm throughout the interview. Certainly, no reasonable innocent person would believe that he was in custody.

After Neff's arrest on June 20, 2017, the officers properly advised him of his Miranda rights and video recorded interviews with him, where he confessed to receiving visual depictions of minors engaged in sexually explicit conduct from another convicted child sex offender via the Internet.

## **CONCLUSION**

The United States respectfully requests that the Court deny defendant Neff's motion to suppress because the APA had reasonable grounds to seize and examine the cell phone and other electronic devices of Neff, a convicted child rapist who was on APA supervision. The APA's review of Neff's internet browser history and photo gallery, the Kent police and ICAC's examination of Neff's cell phone and devices, and Neff's non-custodial interview and confessions after being advised of his Miranda rights were done properly.

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February 2018 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Brian McDonough
Brian McDonough
Assistant U.S. Attorney