THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:17CR355 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DONALD NEFF, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant Donald Neff. Doc. 15. The Government timely opposed the motion. Doc. 16. The Court conducted an evidentiary hearing on June 12, 2018. And the parties filed supplemental briefing that concluded on June 27, 2018. Docs. 33, 35. Upon review of the relevant filings, the testimony and evidence, and applicable law, the Court GRANTS Neff's motion to suppress.

The parties largely agree upon the background facts that led to Neff's motion to suppress. In 2000, Neff was sentenced to 15 years incarceration for anally and orally raping an 11-year-old boy and a 12-year-old boy. Following his release from prison, Neff was under the supervision of Ohio's Adult Parole Authority. On March 24, 2017, parole officers Everett Rogers and Sarah Rannebarger engaged in a routine home visit to Neff's residence. According to both Rogers and Rannebarger, the visit turned into something more when Rogers questioned Neff about a smartphone that was sitting in plain view in the residence's bedroom. Both Rogers and Rannebarger testified that Neff immediately became visibly nervous and stuttered when asked about the use of his phone.

Based upon Neff's demeanor, coupled with his prior convictions for sex crimes related to minors, the parole officers searched Neff's phone. Reviewing the phone, the officers founds references to "teens" and a "Haven for Child Lovers."

Officers utilized this information and returned to Neff's residence on March 27, 2017. At that time, Neff was placed into custody, but he was not read his *Miranda* rights. During questioning, Neff told the officers the location of the home of a friend that had numerous other electronic devices that belonged to Neff. Officers retrieved these devices and had them analyzed. The analysis of these devices revealed that they contained child pornography.

On June 16, 2017, after the analyses of all of Neff's devices had been completed, Portage County Sheriff's Detective Shean Boughner and two additional APA Officers visited Neff at his home. During that encounter, Neff admitted to receiving, viewing, and sending child pornography. On June 20, 2017, Neff was arrested for violating his parole. Neff was *Mirandized* and confessed once again to downloading, possessing, and viewing child pornography.

Based upon the above, Neff was administratively charged with possessing child pornography. Neff waived a hearing on the violation and signed an admission that he possessed material showing a minor engaged in sexual activity. Based upon all of the above, Neff was indicted in this District on September 13, 2017. Neff was charged with one count of receipt and distribution of child pornography and one count of possession of child pornography.

On January 29, 2018, Neff moved to suppress any evidence derived from 1) the search of his cell phone on March 24, 2017, and 2) the subsequent search of his other

electronic devices. Neff also sought to suppress the statements that he made on March 27, 2017. The Court now reviews the parties' arguments on each issue.

**March 24, 2017 Cell Phone Search**

As a parolee in Ohio, Neff was subject to warrantless searches if the officers had "reasonable grounds to believe" that he was violating the law or the conditions of his parole. *See* Ohio Rev. Code Ann. § 2967.131(C). The Sixth Circuit has previously found the "reasonable grounds" standard of Ohio's statute to be constitutional. *United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003) ( "O.R.C. § 2967.131(C) passes constitutional muster...."). The Supreme Court has also held that, under the totality-of-the-circumstances approach, officers generally need only "reasonable suspicion" to search a probationer's home. *United States v. Knights*, 534 U.S. 112, 121 (2001). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person ... of criminal activity.' " *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

If the Court were to simply accept the testimony of the parole officers at its face value, this would be a rather straightforward opinion denying Neff's motion. There is little question that if the Court fully credited the testimony of parole officers Rogers and Rannebarger, then there was reasonable suspicion for the search on March 24, 2017. The Court, however, had the opportunity to observe the testimony of the officers and the opportunity to review the documentary evidence that was created contemporaneously or nearly contemporaneously with the March 24, 2017 search.

Parole officer Rannebarger drafted a report on March 24, 2017 related to the home visit and search of Neff's phone. The report made no mention of Neff's nervous behavior or stuttering speech. Rannebarger's supervisor reviewed the report and made no request that any changes be made to the report. Shortly thereafter, the supervisor, Parole Supervisor Tiffany Lightfoot, made numerous notes in the CCIS Offender Notes – NOTEC system regarding the March 27, 2017 home visit. None of the notes makes any mention of Neff's behavior. Lightfoot also sent an email requesting a forensic examination of Neff's devices with her assertion that there must be "something more" on the devices than had been found. While requesting this examination, Lightfoot again made no mention of Neff's alleged behavior during the home visit. In June, yet another parole officer, Officer Wise, drafted a violation report based on the information found on Neff's devices. Wise's report also offered no description of Neff's conduct during the home visit. Similarly, Wise contacted both local law enforcement agencies, the Kent Police Department and the Portage County Sheriff's Office, to inform them of the images discovered on Neff's devices. While detailing the APA's investigation, Wise again made no mention of Neff's behavior during the home visit.

In fact, it was not until members of the APA were sent a copy of Neff's motion to suppress that any documentation was produced that indicated that Neff's behavior was the justification for the search of his cell phone. The Court acknowledges that it is conceivable that the notes and reports and emails omitted any reference to Neff's behavior because those documents and forums simply did not lend themselves to providing such a description. However, such a finding would contradict the written policies produced by the APA and the understanding of those policies offered by the

4

officers during their testimony. Perhaps more importantly, adopting such a finding would suggest that the APA has no mechanism for parole officers to record their recollection of the events that gave rise to reasonable suspicion. Such a policy would be fraught with pitfalls given that an APA officer could conduct hundreds of home visits in a given year.

It is not without some reluctance that the Court finds that the parole officer's description of Neff's conduct during the home visit lacks credibility. A substantial amount of evidence before this Court suggests that if Neff acted nervous and stuttered, then his conduct would have been detailed in any number of reports to ensure that the search of his devices would withstand future scrutiny. Every APA policy presented to the Court suggests that all notes and reports produced should include all relevant information. Given that Neff's behavior was the exclusive basis for searching his phone, it defies logic that there is **no** mention of that behavior in any report produced contemporaneously with the search.

Based upon the totality of the circumstances and the Court's assessment of the credibility of the parole officers, the Court finds that the APA lacked reasonable suspicion to search Neff's cell phone. The results of the search, therefore, must be suppressed.

**The Fruits of Neff's March 27. 2017 Statements**

Neff next contends that the physical fruits of his March 27, 2017 statements must be suppressed because the statement he made were coerced. The Court finds no merit in such a contention.

The Supreme Court has noted that "with respect to mere failures to warn" that "[t]here is … no reason to apply the 'fruit of the poisonous tree' doctrine[.]" *United*

5

*States v. Patane*, 542 U.S. 630, 642 (2004)(citation omitted).  Acknowledging this holding, Neff contends that the Court must nevertheless suppress the fruits derived from his statements because they were coerced.  Neff's position, however, is built upon his untenable argument that Neff's status as a parolee and the conditions of his parole somehow render his statements involuntary.  The mere fact that Neff was in custody and was obligated to comply with orders of his parole officer are insufficient to warrant a conclusion that his statements were coerced.  As such, *Patane* controls and the fruits of such statements need not be suppressed.

**The Search of Neff's Remaining Devices**

While the Court need not suppress the fruits of Neff's March 30, 2017 statements, there is nothing before the Court to suggest that those statements warranted searching Neff's remaining electronic devices.  As noted above, the Court has found that the APA officers lacked reasonable suspicion to search Neff's cell phone.  Moreover, the only evidence presented to the Court regarding Neff's March 30, 2017 statements indicates that Neff informed officers that a friend of his was in possession of his other electronic devices.   That fact, standing alone, would not give reasonable suspicion to search the devices.  Accordingly, the results of the search of those devices must also be suppressed.

**Inevitable Discovery**

In a brief paragraph, the Government suggests that Neff's ultimate admission in his parole violation hearing supports a conclusion that the child pornography on his computer would have been inevitably discovered.  The Sixth Circuit has described this doctrine as follows:

> [T]he inevitable-discovery doctrine…provides that evidence secured through unlawful means is admissible if the prosecution can show that it

6

> "ultimately or inevitably would have been discovered by lawful means[.]" *Nix v. Williams*, 467 U.S. 431, 444 (1984). For example, if a defendant's coerced statement leads police to recover a dead body, evidence of the body, including its condition as shown by the autopsy, is admissible at trial if the prosecution shows that the body would have been discovered lawfully, by other means such as a volunteer search already underway that would have covered the field where the body was located. *See id.* at 444–50. The doctrine demonstrates the exclusionary rule's aim of deterrence: for even where discovered evidence is the undoubted product of illegality, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ...[,] then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444.

*United States v. Figueredo-Diaz*, 718 F.3d 568, 574–75 (6th Cir. 2013). Here, the Government has offered no argument as to what lawful means would have utilized to discover the alleged child pornography on Neff's devices. Instead, it appears that the Government believes that Neff's failure to assert his Fourth Amendment rights in his parole hearing forecloses his effort to assert those rights herein. The Court has researched and found no law to support such a conclusion. Accordingly, the Government's argument regarding inevitable discovery must be rejected.

**CONCLUSION**

Based upon all of the above, Neff's motion to suppress is GRANTED.

IT IS SO ORDERED.

September 27, 2018              /s/ Judge John R. Adams
                                JUDGE JOHN R. ADAMS
                                UNITED STATES DISTRICT COURT

7